# ATTACHMENT A

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| **MARTHA RUSHTON,** Individually and as Personal Representative of the Estate **GLEN O. RUSHTON, JR.**, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>**A.W. CHESTERTON COMPANY**, a Massachusetts Corporation with its principal place of business in the State of Massachusetts;<br>**CARRIER CORPORATION**, a Delaware Corporation with its principal place of business in the State of Florida;<br>**CLEVER-BROOKS, INC.**, a Delaware Corporation with its principal place of business in the State of Georgia;<br>**CRANE CO.**, a Delaware Corporation with its principal place of business in the State of Connecticut;<br>**GENERAL ELECTRIC COMPANY,** a New York Corporation with its principal place of business in the State of Massachusetts;<br>**IMO INDUSTRIES, INC**. (*sued individually and as successor-in-interest to* DELAVAL STEAM TURBINE COMPANY and DELAVAL, INC.), a Delaware Corporation with its principal place of business in the State of New Jersey<br>**LONE STAR INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* PIONEER SAND & GRAVEL CO.)**,** a Delaware Corporation with its principal place of business in the State of Pennsylvania;<br>**METROPOLITAN LIFE INSURANCE COMPANY**, a New York Corporation with its principal place of business in the State of New York;<br>**NORTH COAST ELECTRIC COMPANY**, a Washington Corporation with its principal place of business in the State of Washington; | No.<br><br>COMPLAINT FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVORSHIP |

COMPLAINT FOR PERSONAL INJURIES - 1

WATERS, KRAUS & PAUL
222 N. PACIFIC COAST HWY, STE 1900
EL SEGUNDO, CA 90245
TEL: 310-414-8146  FAX: 310-414-8156

| | |
|---|---|
| 1 | **PARKER-HANNIFIN CORPORATION** (*sued individually and as successor-in-interest to* SACOMA-SIERRA, INC.) a Ohio Corporation with its principal place of business in the State of Ohio; |
| 2 | |
| 3 | |
| | **PFIZER, INC.**, a Delaware Corporation with its principal place of business in the State of New York; |
| 4 | |
| 5 | **PUGET SOUND PIPE AND SUPPLY COMPANY**, a Washington Corporation with its principal place of business in the State of Washington; |
| 6 | |
| 7 | **TATE ANDALE, LLC** (f/k/a TATE ANDALE INC. f/k/a TATE TEMCO INC., a Maryland Corporation with its principal place of business in the State of Maryland; |
| 8 | |
| 9 | **TRANE U.S. INC.** (f/k/a AMERICAN STANDARD, INC. d/b/a AMERIAN STANDARD PRODUCTS, INC.), a Delaware Corporation with its principal place of business in the State of North Carolina; |
| 10 | |
| 11 | |
| 12 | **VIACOMCBS INC.** (f/k/a CBS CORPORATION, f/k/a VIACOM, INC. *successor by merger with* CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION), a Delaware Corporation with its principal place of business in the State of New York; |
| 13 | |
| 14 | |
| 15 | **WARREN PUMPS LLC**, a Delaware Corporation with its principle place of business in the State of Massachusetts; |
| 16 | **WEIR VALVES & CONTROLS USA INC.** (*sued individually and as successor-in-interest to* ATWOOD & MORRILL), a Massachusetts Corporation with its principal place of business in the State of Texas; |
| 17 | |
| 18 | |
| 19 | **YORK INTERNATIONAL CORPORATION**, a Delaware Corporation with its principal place of business in the State of Wisconsin; |
| 20 | **ZURN INDUSTRIES, LLC** (*sued individually and as successor-in-interest to* ERIE CITY IRON WORKS), a Delaware Corporation with its principal place of business in the State of Pennsylvania; and |
| 21 | |
| 22 | |
| 23 | **DOES 1-350 INCLUSIVE**,         Defendants. |

COMPLAINT FOR PERSONAL INJURIES - 2

WATERS, KRAUS & PAUL
222 N. PACIFIC COAST HWY, STE 1900
EL SEGUNDO, CA 90245
TEL: 310-414-8146   FAX: 310-414-8156

COMES NOW the Plaintiff and presents the following claims for relief:

## I.     PARTIES

Plaintiff **MARTHA RUSHTON** is the surviving spouse of Decedent, **GLEN O. RUSHTON, JR.**  Plaintiff resides in Belle Chasse, Louisiana.

Plaintiff Decedent, **GLEN O. RUSHTON, JR.** (DOB: ▆▆▆▆) resided in Louisiana. Plaintiff's Decedent was diagnosed with mesothelioma on April 19, 2021 and passed away on ▆▆▆▆.

Defendants and/or their predecessors-in-interest are corporations who, at all times relevant herein, manufactured, sold, distributed, purchased, or maintained on their premises asbestos-containing products or products that were used in conjunction with asbestos.

## II.    JURISDICTION AND VENUE

This Court has jurisdiction over this cause pursuant to RCW 4.12.025 because, at all times relevant herein, the Defendants transacted business and/or may be served with process in King County, Washington. This Court has specific jurisdiction over all nonresident Defendants named in this cause because each nonresident Defendant purposefully performed acts or consummated transactions in Washington state; Decedent's cause of action arises out of and/or relates to the Defendants' activities and/or transactions in Washington; and assumption of the jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

This Court has jurisdiction over each and every named Defendant pursuant to RCW 4.12 *et seq.* and Washington case law: By selling, supplying, distributing, and/or causing to be used asbestos or asbestos-containing products to which Decedent was exposed in Washington, the Defendants purposefully availed themselves of the privilege of doing business in Washington, thus invoking the benefits and protections of Washington's laws. Venue is appropriate pursuant to RCW 4.12.025 because Defendant(s) "reside" in King County, Washington, by currently transacting business in King County and/or transacted business at the time the cause of action arose

in King County. Defendants NORTH COAST ELECTRIC COMPANY and PUGET SOUND PIPE AND SUPPLY COMPANY are Washington corporations licensed to do business in this state, maintaining their principal place of business in Washington.

### III. FACTS

Plaintiff Decedent GLEN O. RUSHTON, JR. (DOB: ▇▇▇▇▇▇▇) was exposed to asbestos and asbestos-containing products from 1947 to 1974, which had been mined, manufactured, produced, sold, and/or placed into the stream of commerce and chain of distribution by the Defendants, was exposed to asbestos through the use of products manufactured by Defendants and/or was exposed to asbestos products used on defendants' premises. Specifically, GLEN O. RUSHTON, JR. was exposed to asbestos by and through his work with asbestos-containing products in the state of Washington. As a direct and proximate result of these exposures, Decedent GLEN O. RUSHTON, JR. developed mesothelioma. Plaintiff provides the following information:

    A.       Specific Disease:  Mesothelioma

    B.       Date of Diagnosis:  April 19, 2021

    C.       Occupation:  _____Welder

    D:       Places of Exposure:

Based upon the information acquired to date, Mr. Rushton experienced frequent, regular exposure to asbestos, asbestos products, and asbestos containing equipment and machinery at five primary locations.

Mr. Rushton's first exposure to asbestos occurred during Decedent's childhood, via household exposures attributable to his father, Glen Rushton Sr., who was employed by Southern Pacific Railroad (hereinafter "Southern Pacific") in New Orleans, Louisiana. Mr. Rushton Sr. worked at Southern Pacific for approximately sixteen (16) years, from 1947 to 1963, and was

routinely exposed to, *inter alia*, asbestos containing insulation products used throughout the railroad facility.

As a result of this work, Glen Rushton Sr. was exposed to injurious levels of asbestos from asbestos containing equipment and products utilized at Southern Pacific Railroad, which was in turn taken home to his son, Petitioner GLEN OTIS RUSHTON, JR. Decedent thereby experienced household exposure to asbestos from, *inter alia*, the skin, clothing, and vehicle of his father.

Mr. Rushton's second source of exposure began in approximately 1966 when Decedent accepted a job at Sears, as part of the Distributive Education program offered by his high school. Mr. Rushton's employment at Sears lasted approximately one year, through approximately 1967, and required that he repair and replace, *inter alia*, asbestos containing brake components.

As a result of this work, Mr. Rushton was exposed to injurious levels of asbestos from asbestos containing equipment and products and experienced direct and bystander exposure to, *inter alia*, asbestos containing brake pads utilized by other mechanics at this location.

Mr. Rushton's third source of exposure occurred in approximately 1966, during Mr. Rushton's senior year of high school, when Petitioner worked for Market Street Power for approximately six (6) months. Mr. Rushton was hired as part of a demolition team taking a coal-powered section of Market Street Power offline. Petitioner's work responsibilities included, *inter alia*, tearing out components of boilers and/or heat exchangers in the plant, and being present while others were demolishing portions of the Market Street Power plant.

As a result of this work, Mr. Rushton was exposed to injurious levels of asbestos from asbestos containing equipment and experienced direct and bystander exposure to, *inter alia*, asbestos containing insulation products present during the demolition of Market Street Power's boilers/heat exchangers.

Mr. Rushton's fourth asbestos exposure source was the United States Navy. From approximately November 24, 1969 through June 22, 1973, Mr. Rushton served as a member of the United States Navy.

As a sailor/serviceman, Mr. Rushton completed his basic training in Orlando, Florida before attending "A-school" at Great Lakes, Illinois from March 9, 1970 through April 10, 1970.

Thereafter, while still serving in the Navy, Mr. Rushton attended submarine school in Groton, Connecticut, which lasted approximately three (3) months. Petitioner then received orders to join the Gold Crew to Spain aboard the USS Lewis & Clark (hereinafter "Lewis & Clark") where he served until, he was honorably discharged.

While aboard the Lewis & Clark, Mr. Rushton completed his requisite apprenticeship, as a mess cook, for approximately one (1) month. Mr. Rushton was thereafter promoted to 3d class, A-gang and continued his customary apprentice work. Mr. Ruston would eventually earn his "Dolphin classification," which is awarded after a sailor memorizes the location of all the vessel's equipment and its use.

Additionally, while aboard the Lewis & Clark from approximately April 30, 1971 through July 21, 1972, Mr. Ruston was stationed in Bremerton, Washington where he worked in the Puget Sound during the entirety of the Polaris to Poseidon missile system transition. While stationed in Bremerton, Mr. Ruston reported to the Lewis & Clark daily and was on watch during the removal, repair, replacement, and pressure testing of all valves, in addition to the removal, repair, and replacement of the vessel's pumps, motors, and reactors. Additionally, Mr. Rushton work responsibilities aboard the Lewis & Clark included replacing gaskets and packing at the conclusion of the vessel's sea trials.

1    As a result of his work aboard the Lewis & Clark, Mr. Rushton was exposed to injurious levels of asbestos from asbestos containing equipment and products.

Mr. Rushton's fifth and final source of asbestos exposure occurred from approximately 1973 to 1974 at Avondale Shipyard during Petitioner's work aboard the "Green" vessels including but not limited to, the Green Valley. Mr. Rushton was an apprentice to a mechanic working aboard these vessels. Mr. Rushton's only other work at Avondale Shipyard was new construction aboard a "jack up rig" designed for offshore oil exploration. Mr. Rushton never worked aboard any vessels commissioned, owned, or operated by the federal government.

As a result of Mr. Rushton's work at Avondale Shipyard, Mr. Rushton was exposed to injurious levels of asbestos from asbestos containing thermal insulation, equipment, and products.

E:    Dates of Exposure:    1947-1974

F.    Current Address:    ▇▇▇▇▇▇▇▇▇
       ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

## IV.    LIABILITY

Plaintiff claims liability based upon the theories of product liability (RCW 7.72 et. seq. and Washington common law); negligence; strict product liability under Sections 388 and 402B of the Restatement (2d) of Torts; breach of warranty; (RCW 62A); premises liability; and any other applicable theory of liability. The liability-creating conduct of Defendants consisted, inter alia, of negligent and unsafe design; failure to inspect, test, warn, instruct, monitor and/or recall; failure to substitute safe products; marketing or installing not reasonably safe or extra-hazardous and/or defective products; marketing or installing products not reasonably safe as designed; marketing or installing products not reasonably safe for lack of adequate warning and marketing or installing products with misrepresentations of product safety; requiring, specifying, providing, and/or

WATERS, KRAUS & PAUL
222 N. PACIFIC COAST HWY, STE 1900
EL SEGUNDO, CA 90245
TEL: 310-414-8146   FAX: 310-414-8156

17

utilizing products not reasonably safe as designed.

## V. ALLEGATIONS AGAINST MANUFACTURING, DISTRIBUTOR, AND EQUIPMENT DEFENDANTS

Defendants **A.W. CHESTERTON COMPANY**, **CARRIER CORPORATION**, **CLEVER-BROOKS, INC., CRANE CO.**, **GENERAL ELECTRIC COMPANY, IMO INDUSTRIES, INC**. (*sued individually and as successor-in-interest to* DELAVAL STEAM TURBINE COMPANY and DELAVAL, INC.), **PARKER-HANNIFIN CORPORATION** (*sued individually and as successor-in-interest to* SACOMA-SIERRA, INC.) **PFIZER, INC.**, **PUGET SOUND PIPE AND SUPPLY COMPANY, TATE ANDALE, LLC, TRANE U.S. INC., VIACOMCBS INC.** (f/k/a CBS CORPORATION, f/k/a VIACOM, INC. *successor by merger with* CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)(*successor-in-interest* BF STURTEVANT), **WARREN PUMPS LLC, WEIR VALVES & CONTROLS USA INC., and YORK INTERNATIONAL CORPORATION**, **ZURN INDUSTRIES, LLC** or their predecessors-in-interest are, or at times material hereto, were engaged in the mining, processing, manufacturing, sale, supply, and/or distribution of asbestos, asbestos-containing products, and/or equipment requiring the use of asbestos and asbestos-containing products for proper function, or equipment for which asbestos-containing products were specified for use by the manufacturer, supplier or seller.  These Defendants are or were engaged in the business of selling, manufacturing, producing, designing, supplying and/or otherwise putting into the stream of commerce and the chain of distribution the above-described asbestos-containing products and/or equipment without substantial change in the condition in which they were sold, manufactured, produced, designed, supplied, and otherwise put into the stream of commerce/chain of distribution.

Plaintiff Decedent GLEN O. RUSHTON, JR. was occupationally exposed to these Defendants' asbestos-containing products and/or equipment for which asbestos-containing products were specified for use by the manufacturer, or seller, or which required the use of asbestos or asbestos-containing products for proper function. In working with and around such asbestos products and equipment, Plaintiff Decedent GLEN O. RUSHTON, JR. inhaled great quantities of asbestos fibers. Plaintiff alleges that these exposures occurred, in part, in and throughout the state of Washington. Further, Plaintiff alleges, as more specifically set out below, that Plaintiff Decedent GLEN O. RUSHTON, JR.'s occupational exposure to the asbestos from Defendants' above-described products or equipment was a proximate and producing cause of his injuries. Because each exposure to such products caused or contributed to Plaintiff Decedent's injuries, the doctrine of joint and several liability should be extended to apply to each Defendant herein.

The defective design and condition of the above-described products and equipment rendered them not reasonably safe, and the asbestos-containing products and equipment were in this defective condition at the time they were designed by or left the hands of Defendants. Defendants' above-described asbestos-containing products and/or equipment were defective in the manner in which they were marketed because they failed warn about potential asbestos health hazards associated with the use of or the exposure to the products. This marketing defect rendered the above-described products and equipment not reasonably safe at the time they were designed or left the hands of the Defendants, which defect proximately caused Plaintiff Decedent's disease. Defendants are liable in negligence and product liability including, but not limited to, strict product liability for the above-described defects.

Defendants knew that their asbestos-containing products and/or equipment would be used without inspection for defects. By placing them on the market, Defendants represented that they

would safely do the job for which they were intended, which must necessarily include safe manipulation or installation of the asbestos-containing products or operation, maintenance and repair of the equipment requiring or specifying the use of asbestos and asbestos-containing products.

Plaintiff Decedent GLEN O. RUSHTON, JR. was unaware of the hazards and defects in the asbestos-containing products of the defendants, which made them unsafe for purposes of manipulation or installation. Similarly, Plaintiff Decedent was unaware of the hazards and defects in the equipment requiring or calling for the use of asbestos and asbestos-containing materials.

During the periods that Plaintiff Decedent was exposed to the asbestos-containing products and equipment of the Defendants, these asbestos-containing products and equipment were being utilized in a manner, which was intended by Defendants.

Plaintiff Decedent GLEN O. RUSHTON, JR.'S illness and disabilities are also a direct and proximate result of the negligence of each Defendant and its predecessor-in-interest in that said entities produced, designed, sold, supplied and otherwise put into the stream of commerce and chain of distribution asbestos, asbestos-containing products, equipment requiring the use of asbestos or asbestos-containing products for proper function, and/or equipment for which asbestos-containing products were specified for use by the manufacturer, or seller, which products/equipment the Defendants knew, or in the exercise of ordinary care, should have known, were deleterious and highly harmful to Plaintiff Decedent's health and well-being. Certain Defendants created hazardous and deadly conditions to which Plaintiff Decedent was exposed and which caused Plaintiff Decedent to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some, or all of the following respects, among others, same being the proximate cause of Plaintiff Decedent's illness and disabilities:

(a) in failing to timely and adequately warn Plaintiff Decedent of the dangerous characteristics and serious health hazards associated with exposure to asbestos and asbestos-containing products or equipment requiring or calling for the use of asbestos and asbestos-containing products;

(b) in failing to provide Plaintiff Decedent with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff Decedent from being harmed and disabled by exposure to asbestos and asbestos-containing products or equipment requiring or calling for the use of asbestos and asbestos-containing products;

(c) in failing to place timely and adequate warnings on the containers of said asbestos and asbestos-containing products or equipment requiring or calling for the use of asbestos and asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and equipment;

(d) in failing to take reasonable precautions or exercise reasonable care to publish, adopt, and enforce a safety plan and safe method of handling and installing asbestos and asbestos-containing products or utilizing the equipment requiring or calling for the use of asbestos and asbestos-containing products in a safe manner;

(e) in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products or the equipment requiring or calling for the use of asbestos and asbestos-containing products;

(f) in failing to properly design and manufacture asbestos and asbestos-containing products or equipment requiring or calling for the use of asbestos and asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g) in failing to properly test said asbestos-containing products and equipment before they were released for consumer use; and

(h)     in failing to recall or remove from the stream of commerce said asbestos-containing products or equipment requiring or calling for the use of asbestos and asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products and equipment.

## VI. ALLEGATIONS AGAINST SUPPLIER DEFENDANTS

For all pertinent times, **LONE STAR INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* PIONEER SAND & GRAVEL CO.) and **NORTH COAST ELECTRIC COMPANY** (Supplier Defendants), individually, sold, distributed, and supplied asbestos and asbestos-containing products, which Plaintiff Decedent came in contact with, and utilized, and asbestos which Plaintiff Decedent inhaled, causing his injuries and illnesses.

As miners, shippers and suppliers of asbestos fibers to various locations owned or operated by asbestos product manufacturers, Supplier Defendants are liable to Plaintiff Decedents for failure to warn of the health hazards of exposure to asbestos and failure to design and package its product of raw asbestos so as to adequately protect and warn users of the dangers of exposure to asbestos. Further, Supplier Defendant is liable to Plaintiff Decedents as professional vendors of asbestos or asbestos-containing products, and as such, because of the Defendants' size, volume of business, and merchandising practices, they knew or should have known of the defects of the asbestos/asbestos products they sold and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said products.

Further, Supplier Defendants made misrepresentations regarding the safety of asbestos to the asbestos-product manufacturers, thereby fraudulently inducing other sophisticated users to use Supplier Defendants' asbestos instead of other types. As such, Supplier Defendant is liable to the Plaintiff Decedent, whose disease was caused by exposure to the Supplier Defendants' asbestos because Supplier Defendants' fraudulent misrepresentations were detrimentally relied upon (1) by

asbestos-product manufacturers incorporating Supplier Defendants' raw asbestos into their finished product and (2) by the Plaintiff Decedent who was exposed to the asbestos-containing product.

Finally, Supplier Defendants are liable to Plaintiff because they knew or should have known that the asbestos products, which they sold and supplied, were not reasonably safe in normal use; their failure to communicate this information constitutes negligence. Plaintiff Decedent GLEN O. RUSHTON, JR. alleges that his exposures to asbestos for which any and all Supplier Defendant is liable occurred, in part, in and throughout the state of Washington. This negligence was the cause of Plaintiff Decedent's injuries, including, but not limited to, mesothelioma and other ill health effects.

## VII.   ALLEGATIONS AGAINST METROPOLITAN LIFE INSURANCE COMPNAY

Defendant **METROPOLITAN LIFE INSURANCE COMPANY** rendered substantial aid and assistance to the manufacturers of asbestos containing products to which Decedent was exposed, and such assistance by Metropolitan Life aided and abetted the negligence and the marketing of unreasonably dangerous asbestos containing products by such manufacturers which proximately caused Decedent's illness, disability and/or death.

Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to the Decedent by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation, the duty:

(1)   to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

1       (2)    to instruct fully and adequately in the uses of their products so as to eliminate or
2 reduce the health hazards concomitant with their normal or intended use.

3       In undertaking these duties, **METROPOLITAN LIFE** knew or should have known that
4 it was providing testing services for the ultimate protection of third persons, including the
5 Decedent.

6       In both conducting said tests and in publishing their alleged results, **METROPOLITAN
7 LIFE** failed to exercise reasonable care to conduct or publish complete, adequate and accurate
8 tests of the health effects of asbestos. **METROPOLITAN LIFE** also caused to be published
9 intentionally false, misleading, inaccurate and deceptive information about the health effects of
10 asbestos exposure.

11       The Decedent unwittingly but justifiably relied upon the thoroughness of
12 **METROPOLITAN LIFE's** tests and information dissemination, the results of which
13 Metropolitan Life published in leading medical journals.

14       As a direct and proximate contributing result of **METROPOLITAN LIFE's** failures to
15 conduct or accurately publish adequate tests or disseminate accurate and truthful information, after
16 undertaking to do so; (i) the risk of harm to the Decedent from asbestos exposure was increased,
17 and (ii) the Decedent suffered the injuries described below.

18   In failing to test fully and adequately for the adverse health effects from exposure to asbestos;
19 in delaying the publication of such results; and in falsely editing such results as were obtained; in
20 suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and
21 distribution of asbestos as a harmless product; and in collaborating with the asbestos-producing
22 Defendants materially to understate the hazards of asbestos exposure, all for its own profit and
23

COMPLAINT FOR PERSONAL INJURIES - 14

WATERS, KRAUS & PAUL
222 N. PACIFIC COAST HWY, STE 1900
EL SEGUNDO, CA 90245
TEL: 310-414-8146   FAX: 310-414-8156

gain, **METROPOLITAN LIFE** acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the Decedent.

## VIII.   ALLEGATIONS OF LOSS OF CONSORTIUM

Plaintiff MARTHA RUSHTON brings this cause of action against all Defendants for the loss of consortium in the marital relationship between her spouse, GLEN O. RUSHTON, JR., and herself.  MARTHA RUSHTON has suffered damages, both past and future, as a result of the acts and omissions of the Defendants described herein.  The permanent physical injuries were a direct and proximate cause by the Defendants to Plaintiff Decedent GLEN O. RUSHTON, JR., and those injuries have detrimentally impaired the love, companionship, comfort, affection, solace, moral support, and physical assistance in the operating and maintaining a home that Decedents once shared in their marital relationship, causing MARTHA RUSHTON pain and suffering in the past and to which she will in all likelihood continue to suffer in the future.

## IX.   DAMAGES

As a proximate result of Defendants' negligence and/or product liability, Plaintiff Decedent sustained pain, suffering and disability prior to death in an amount not now known, but which will be proven at trial.  Plaintiff's Decedent GLEN O. RUSHTON, JR. also sustained medical expenses, economic losses and funeral expenses in an amount to be proven at trial.  Plaintiff MARTHA RUSHTON, as personal representative of the estate of GLEN O. RUSHTON, JR. asserts wrongful death claims on behalf of all statutory beneficiaries of Mr. Rushton.

WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as follows:

1. For general and special damages specified above, including pain, suffering, loss of spousal and/or parental relationship, disability and wrongful death;

2. The statutory beneficiaries of a wrongful death claim, namely Plaintiff and those provided by law, have suffered damages on account of the death of Decedent for the loss of monetary contribution the Decedent would have made to them; for funeral expenses; and for the loss of love, care, affection, services, companionship, guidance, and society of the Decedent with them.  Claims for loss of consortium on behalf of the spouse and children are specifically included within damages claimed pursuant to the preceding statutes.

3. For Plaintiffs' costs and disbursements herein;

4. For prejudgment interest in the amount to be proven at trial; and

5. For such other relief as the Court deems just.

DATED this 19th day of January 2022

                                                 WATERS, KRAUS & PAUL

                                                 By /s/ *Susan Ulrich*
                                                      Susan Ulrich, WASB#54568
                                                      222 N. Pacific Coast Highway, Suite 1900
                                                      El Segundo, CA 90245
                                                      Phone: (310) 414-8146
                                                      Fax:    (310) 414-8156
                                                      Email: sulrich@waterskraus.com
                                                      *Attorneys for Plaintiffs*